UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEAN SZABO, | ) | Case No. 1:20–CV–01206–BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

**I.  Introduction**

Jean Szabo, Plaintiff, seeks judicial review of the final decision of Kilolo Kijakazi, the Acting Commissioner of Social Security (the "Commissioner"). The Commissioner denied Szabo's application for supplemental security income and disabled widow's benefits, as well as disability insurance benefits, under Titles II and XVI of the Social Security Act. This matter is before me under 42 U.S.C. § 405(g) and Local Rule 72.2(b). Because the ALJ failed to follow proper procedures, her decision is not supported by substantial evidence. Therefore, I recommend that the Commissioner's final decision be REVERSED and REMANDED for further proceedings under Sentence Four of § 405(g).

**II.  Procedural History**

Szabo applied for disability insurance benefits and supplemental security income on November 16, 2017. (ECF No. 13, PageID #: 87). She later applied for disabled widow's benefits

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kijakazi is substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

on November 26, 2018.[2] (ECF No. 13, PageID #: 87). She alleged a period of disability beginning on July 28, 2017, for both claims. (ECF No. 13, PageID #: 87).

The Ohio Division of Disability Determination (the "State Agency") initially denied Szabo's claim on May 2, 2018. (ECF No. 13, PageID #: 87). The State Agency denied it again on July 10, 2018, during reconsideration. (ECF No. 13, PageID #: 87). Eight days later, Szabo requested a hearing before an ALJ. (ECF No. 13, PageID #: 87).

ALJ Catherine Ma presided over Szabo's hearing on November 29, 2018. (ECF No. 13, PageID #: 87). Szabo appeared through counsel and testified. (ECF No. 13, PageID #: 111–36). Mark Anderson testified as an impartial vocational expert. (ECF No. 13, PageID #: 136–43).

The ALJ issued her decision on May 28, 2019. (ECF No. 13, PageID #: 87–100). She determined that Szabo was not disabled under the Social Security Act. (ECF No. 13, PageID #: 87–100). Thereafter, Szabo asked the Appeals Council to review and set aside the ALJ's ruling. The Appeals Council denied that request on April 2, 2020. (ECF No. 13, PageID #: 73–75). This timely appeal followed. (ECF No. 1). Szabo filed her brief in support on February 1, 2021. (ECF No. 15). After being granted extensions, the Commissioner responded on April 15, 2021. (ECF No. 19). Szabo replied on April 29, 2021. (ECF No. 19).

III.    **Relevant Background**

The ALJ's summaries of the testimony, medical evidence, and opinion evidence provide useful background for this report and recommendation. But for the reasons discussed below, the Court has included only the ALJ's summaries of the evidence that is relevant to Szabo's neuropathy of the hands and feet, as it is directly relevant to the Court's conclusion that this case should be remanded.

---

[2] Szabo has not put at issue the ALJ's findings or analysis of her disabled widow's benefits.

A. **Testimony**

The ALJ summarized Szabo's testimony:

> The claimant alleges that she is unable to sustain full time employment due to a combination of symptoms from her impairments including carpal tunnel syndrome; chronic pancreatitis; diabetes mellitus type 11; neuropathy of hands and feet; difficulty remembering and concentrating; anxiety; depression; and arthritis in her thumbs (1E; hearing testimony). She testified that she has severe pain in her hands due to carpal tunnel syndrome and in her feet due to neuropathy, causing her to stay in her bed sick with pain many days (hearing testimony). She also testified that due to her hand condition she has difficulty gripping, especially with her right hand, explaining that she has trouble with pulling the laundry out of the machines, pulling up her pants, holding a dinner plate, using a broom, and brushing her teeth (3E; 1F/19; hearing testimony). She testified that she utilizes a shower chair and that her daughter helps bath her and wash her hair (hearing testimony). The claimant stated that she does not do any of the household chores, does not help with shopping, and only occasionally cooks simple meals (hearing testimony). The claimant testified that her hand/wrist braces are restrictive and cause her pain by putting pressure on the base of her thumb (hearing testimony). She stated that she can stand for approximately 30 minutes before the pain in her feet is unbearable and she needs to rest for 30 minutes off of her feet (hearing testimony).
>
> The claimant also testified that while she takes medication for her pain symptoms, the medication side effects make it difficult for her to think clearly and concentrate (hearing testimony). She reported that thoughts come and go quickly causing her to not think clearly as a result of her medications (hearing testimony). She also testified that she has problems with her memory explaining that, at times, she does not recall what she is doing or why she is doing something. However, she also testified that if she reduces her medication, her pain symptoms increase (hearing testimony).

(ECF No. 13, PageID #: 93–94).

B. **Medical Evidence**

> The claimant has a documented history of chronic pain in her extremities related to her carpal tunnel syndrome and osteoarthritis and allied disorders. The claimant has treated her chronic pain, chronic neuropathy, and carpal tunnel, and has followed with an

3

endocrinologist and occupational therapy, but reports ongoing problems (1F/13; 6F; 7F; 8F; hearing testimony).

In November 2017, an x-ray of her right hand showed mild CMC thumb osteoarthritis, mild IPJ thumb osteoarthritis with post-traumatic changes and a physical exam revealed a positive Tinel's si[gn] at carpal tunnel to ring finger and Durkan's sign was positive for the ring and middle fingers on her right hand (1F/6-7). After the physical exam on November 29, 2017, the claimant was diagnosed with right thumb osteoarthritis and right carpal tunnel syndrome (1F/8). At that point, carpal tunnel surgery was discussed including potential complications from her diabetes mellitus, the claimant was given a thumb brace, she was referred to occupational therapy, and she was given an injection of the CMC joint of the right thumb (1F/8).

The claimant continued to report pain in her extremities[,] describing it as dull and continuous without weakness or arms or legs (6F; 7F; 8F). She followed up with the pain management clinic and stated in July and December 2018 that her medications were improving her ability to perform her activities of daily life, reporting a reduction of pain with the prescribed medication, Neurontin (7F/14, 194). The records indicate that the claimant was stable on her medication regimen in July 2018, with notes stating that "the medications reduce her pain to an acceptable level and allow her to remain functional with her daily activities" (7F/20).

She followed up in September 2018 for her right hand pain with the orthopedic doctor reporting numbness in all digits in her right hand and the ulnar 3 digits being worst (7F/71). She stated that the base of her thumb was the primary pain and the pain was worse with activity including grasping and twisting (7F/71). Upon physical exam, Finkelstein's was positive, Tinel's sign at carpal tunnel was positive to thumb and palm, Durkan's sign was positive to all four digits, sensory exam was grossly decreased in her radial four digits, and Tinel's sign at Guyon's canal and cubital tunnel were both positive to the little finger (7F/73). The exam also showed she had full flexion range of motion in her fingers and thumb. She was diagnosed with right hand ulnar sided numbness and pain, clinically referred to as ulnar neuropathy; right thumb osteoarthritis; right DeQuervains tenosynovitis; and right carpal tunnel syndrome (7F/74). Surgical options were discussed, but the notes indicate that the doctor wants 'to defer this until her HBA1 C is better optimized' and also had concerns about the diffuse pain and the prognosis surgery might offer (7F/74). The claimant continued to wear her cool thumb brace and another referral for occupational therapy was

4

> given, and a second injection of the right carpal tunnel was performed (7F/74).
>
> Additionally[,] records from November 19, 2018[,] indicate that there is electrodiagnostic evidence of right median sensorimotor mononeuropathy at or distal to the wrist, moderate severeity [*sic*] with demyelination in nature; there was no electrodiagnostic evidence of right ulnar mononeuropathy at the elbow or wrist, or of right cervical radiculopathy (7F/123). The records also show that there was no electrodiagnostic evidence of left carpal tunnel syndrome, left ulnar mononeuropathy or left cervical radiculopathy in November 2018 (7F/123).
>
> The claimant followed up on her September 2018 occupational therapy referral on December 1, 2018[,] and reported ongoing symptoms in her ulnar digits and significant thumb pain (7F/143). The claimant indicated that she has home exercises that she performs and she was given additional home exercise program exercises to perform on her own without further follow up with occupational therapy (7F/145). She followed up with the orthopedic doctor on December 3, 2018, for her right hand reporting the worst pain in her little finger and thumb (7F/150).
>
> The claimant continued to report pain in her hands at her pain management appointment on December 18, 2018, but also reported that the medication regimen is improving her ability to perform her activities of daily living (7F/194). At this appointment[,] she also denied numbness or tingling in her right hand, left hand, and right and left feet, and demonstrated 5/5 strength in all four extremities (7F/199). Overall, the notes indicate the claimant was stable with her medications and told to follow up in six months (7F/200).

(ECF No. 13, PageID #: 94–95).

## IV. The ALJ's Decision

As is relevant here, the ALJ issued the following findings of fact and narrative analysis:

> 5. The claimant has the following severe impairments: carpal tunnel syndrome; osteoarthritis and allied disorders; obesity; and trauma and stressor-related disorders…
>
> 6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…

5

> I also considered listing 11.14 peripheral neuropathy… The claimant alleges that she has chronic pain, tingling, and numbness in her feet, hands, and fingers, and the records demonstrate that she has been diagnosed with carpal tunnel syndrome. However, there is no evidence demonstrating that limitations related to her carpal tunnel symptoms meet the requirements necessary to find an extreme limitation as described. Therefore, I find that listing 11.14 is not met…
>
> 7.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours and sit for up to six hours in an eight-hour workday; no right hand controls; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; occasionally perform right handling; never have exposure to unprotected heights; limited to performing simple, routine tasks; and is also limited to routine workplace changes…
>
> 8.   The claimant is unable to perform any past relevant work…
>
> 12.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…
>
> 13.  The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2017, through the date of this decision…

(ECF No. 13, PageID #: 90, 93, 98–100).

V.   **Law and Analysis**

   A.   **Standard of Review**

The Court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a

conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "It is well established that the party seeking remand bears the burden of showing that a remand is proper…" *Oliver v. Sec'y of Health and Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Under this standard of review, a court cannot decide the facts anew, make credibility determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference…"). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Thus, the movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too. *See Greene ex rel. Greene v. Astrue*, No. 1:10-cv-414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion.").

7

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards, *i.e.*, "fails to follow its own regulations," unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is not harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[3] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20

---

[3] *E.g. Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

**B.     Discussion**

Szabo raises three issues here:

> 1.     The ALJ erroneously failed to properly evaluate the totality of the evidence in the record.
>
> 2.     The ALJ committed harmful error in her determination regarding credibility as her finding was not supported by substantial evidence and violated Social Security Ruling 16-3p.
>
> 3.     The ALJ committed harmful error when she did not meet her burden at Step Five of the Sequential Evaluation.

(ECF No. 15, PageID #: 991). But within her first issue, Szabo specifically alleges that the ALJ improperly analyzed her claim at Step Three under Listing 11.14 by omitting any discussion of the "part B" criteria, an alternative avenue by which Szabo could meet that listing. (ECF No. 15, PageID #: 1003–4). As detailed below, the Court agrees with Szabo.

Satisfying a listing at Step Three results in an automatic determination of disability. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Thus, "the evidentiary standards for the presumptive disability under these Listings are more strenuous than for claims that proceed through all five steps of the sequential analysis." *Harvey v. Comm'r of Soc. Sec.*, No. 16–CV–3266, 2017 WL 4216585, *5 (6th Cir. Mar. 6, 2017) (citing 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); and *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014)). The Sixth Circuit "does not require a heightened articulation standard from the ALJ at Step Three of the sequential evaluation process." *Grohoske v. Comm'r of Soc. Sec.*, No. 3:11–CV–410, 2012 WL 2931400, *3 (N.D. Ohio July 18, 2012). But the ALJ must

9

"actually evaluate the evidence," compare it to the requirements of the relevant Listing, and provide an "explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

Listing 11.14 concerns peripheral neuropathy. 20 C.F.R. § 404, Subpart P, Appendix 1, Section 11.14. A claimant can meet this listing only by satisfying all of the criteria under either "part A" or "part B." *Id*; *see also Zebley*, 493 U.S. at 530 ("An impairment that manifests only some of the criteria [of a listing], no matter how severely, does not qualify."). To meet Listing 11.14(A), a claimant must show the "[d]isorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. § 404, Subpart P, Appendix 1, Section 11.14(A). To meet Listing 11.14(B), on the other hand, the claimant must demonstrate (1) a "[m]arked limitation (see 11.00G2) in physical functioning (see 11.00G3a)," and (2) a marked limitation "in one of the following: [u]nderstanding, remembering, or applying information (see 11.00G3b(i)); or [i]nteracting with others (see 11.00G3b(ii)); or [c]oncentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or [a]dapting or managing oneself (see 11.00G3b(iv))." 20 C.F.R. § 404, Subpart P, Appendix 1, Section 11.14(B).

In her decision, the ALJ stated that she "considered [L]isting 11.14[,] peripheral neuropathy." (ECF No. 13, PageID #: 91). And the ALJ explicitly summarized the regulatory standard for meeting Listing 11.14(A). (ECF No. 13, PageID #: 91). But, as the Commissioner concedes, "the ALJ did not discuss the paragraph B criteria of Listing 11.14." (ECF No. 18, PageID #: 1033). Szabo argues that the ALJ's failure to do so is reversible error. (ECF No. 15, PageID #: 1003). The Commissioner contends, however, that the ALJ's oversight "is harmless" because the ALJ directly analyzed Listing 12.06; the Commissioner argues that Listing 12.06's "paragraph B"

10

is identical to the second part of Listing 11.14(B). (ECF No. 18, PageID #: 1033). And because the ALJ found no marked limitations in her Listing 12.06(B) analysis, the Commissioner further argues that a reviewing Court can easily infer that the ALJ would have found Szabo's claim to be meritless under Listing 11.14(B), too. (ECF No. 18, PageD #: 1033).

The Commissioner is correct that Listing 12.06(B) focuses on the same four areas of mental functioning as Listing 11.14(B), and that the regulations define those four areas of mental functioning with identical words. *Compare* 20 C.F.R. § 404, Subpart P, Appendix 1, Section 11.14(B)(1-4) *and* 20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.06(B)(1-4). The Commissioner is also correct that, at times, reviewing courts have applied an ALJ's paragraph B analysis from one listing within the broad group of listings under "12.00 Mental Disorders—Adult" to another listing within that same group. *E.g. Betts v. Berryhill*, No. 5:18–CV–1274, 2019 WL 1544222, *19 (N.D. Ohio Apr. 9, 2019) (citing *Rivers v. Comm'r of Soc. Sec.*, No. 17–11680, 2018 WL 4610874, *6 (E.D. Mich. Aug. 29, 2018) and *Suesz v. Comm'r of Soc. Sec.*, No. 1:13–CV–283, 2014 WL 4162555, *5 (S.D. Ohio Aug. 20, 2014)). Those courts have made it clear, though, that they have done so only because the paragraph B analysis is "substantially identical" between, at least, Listings 12.02, 12.04, 12.05 (part D), 12.06, and 12.08 (part B). *Betts*, 2014 WL 4162555 at *5.

The Commissioner is incorrect, though, in asserting that the ALJ's analysis of Listing 12.06(B) can stand in for the unarticulated analysis required under Listing 11.14(B). The regulations make clear that listings in the 12.00's concern "only the limitations that result from [a claimant's] mental disorder(s)." 20 C.F.R. § 404, Subpart P, Appendix 1, Section 12.00(F)(1). Thus, when analyzing a claim under Listing 12.06(B), the ALJ is considering specifically "the effects of [a claimant's] mental disorder on each of the four areas of mental functioning." 20 C.F.R.

11

§ 404, Subpart P, Appendix 1, Section 12.00(F)(2). On the other hand, the regulations make it equally clear that listings in the 11.00's concern only "the effects of your neurological disorder on your physical and mental functioning." 20 C.F.R. § 404, Subpart P, Appendix 1, Section 11.00(G)(1). Thus, when considering whether the claimant has a marked limitation in mental functioning under Listing 11.14(B), the ALJ is to consider whether the claimant is "seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings," specifically "due to the signs and symptoms of [their] neurological disorder…" 20 C.F.R. § 404, Subpart P, Appendix 1, Section 11.00(G)(2)(b). In short, listings in the 11.00's and the 12.00's contemplate limitations on mental functioning that stem from materially different sources: neurological disorders and mental health disorders. Put another way, to properly analyze the two listings, the ALJ must consider two different questions, which can lead to two different conclusions. Thus, the mental-functioning analysis in Listing 11.14 is not "substantially identical" to the mental-functioning analysis in Listing 12.06. Accordingly, the Court must reject the Commissioner's argument.

Separately, "[t]he Sixth Circuit has found an ALJ's conclusory findings at Step Three to be harmless error where the claimant did not put forth sufficient evidence to demonstrate that her impairments met or medically equaled the severity of the listing." *See Doolittle v. Comm'r of Soc. Sec.*, No. 1:17–CV–1942, 2018 WL 4615965, *10 (N.D. Ohio Sept. 26, 2018) (collecting cases). Conversely, it has held that an ALJ's failure to support his conclusory Step Three finding was not met was not harmless because the claimant might have put forward sufficient evidence to meet the listing. *Reynolds*, 424 F. App'x at 416. Szabo put forth sufficient evidence here. The ALJ noted that Szabo complained of "chronic pain, tingling, and numbness in her feet, hands, and fingers, and the records demonstrate that she has been diagnosed with carpal tunnel syndrome." (ECF No.

13, PageID #: 91). And the ALJ included in the RFC limitations for "no 1ight hand controls" and "occasionally perform right handling." (ECF No. 13, PageID #: 93). And Szabo has alleged that peripheral neuropathy "interfered with her ability to concentrate and maintain attention (Tr. 311–12, 57–58) along with the need for help with showering, dressing, and eating." (ECF No. 15, PageID #: 1003). The Court thus concludes that Szabo has put forth sufficient evidence that she could meet Listing 11.14(B). That renders the ALJ's failure harmful, rather than harmless. *Reynolds*, 424 F. App'x at 416.

As stated above, there is no "heightened articulation standard from the ALJ at Step Three…" *Grohoske*, 2012 WL 2931400 at \*3. But the ALJ must "actually evaluate the evidence," compare it to the requirements of the relevant Listing, and provide an "explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 F. App'x at 416. The ALJ did not do so. By failing to address Listing 11.14(B), the ALJ failed to create a logical bridge between the record evidence and the finding that Szabo is not disabled under Listing 11.14 generally. *Fleischer*, 774 F. Supp. 2d at 877. Szabo's claim should thus be remanded to the State Agency for further proceedings. *Id.*

\*       \*       \*

Because the Court concludes that the ALJ's Step Three error requires remand, the Court expresses no opinion on Szabo's other issues.

**VI.     Recommendation**

The ALJ failed to follow proper procedures; thus, her decision is not supported by substantial evidence. Accordingly, I recommend that the Commissioner's final decision be REVERSED and REMANDED for further proceedings under Sentence Four of § 405(g).

DATED: August 6, 2021

*Carmen Henderson*
Carmen E. Henderson
United States Magistrate Judge

OBJECTIONS

    Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).